have a case for today, which is 2018-30268, consolidated with 2018-3269, 30270, 30271, and 30281. Claimant ID 100081155 v. BP Exploration & Prodn, et al. Your Honors, the Deepwater Horizon oil spill was in April 2010. JME filed a claim for a discrete limited compensation period window, May through December of 2010. And the district court held that a transfer of JME's operations to Gulf Blue in June of 2011, over a year after the oil spill and six months after the end of the compensation period, means that JME must be treated as, quote, a failed business, end quote, for purposes of that compensation period that happened six months before the transition. Your Honors, the settlement does not require this result. Now, the main conflict, I believe, between BP and JME comes down to the definition of liquidation, the meaning of the liquidation requirement in the settlement. Do we do this de novo, or do we have to give deference in some way? It's a de novo review of the meaning of the terms. So what does the settlement mean? And when it comes to the definition of liquidation, Your Honors, the settlement used the word liquidation. It didn't use the word sell. It didn't use the word dispose of. It didn't use the word transition ownership of. This carefully negotiated document uses the word liquidation. And so the question becomes, what is the plain and ordinary meaning of that word as used in this context? Now, the first clue, or textual clue that I'd ask the Court to examine, tab 26 of our record excerpts, page 5, paragraph 8, talks about the sort of documentation for failed businesses that they have to submit. And one of those is evidence of any asset sales, including a description of each asset and the corresponding sales prices, and evidence of any payments of liquidation proceeds in satisfaction of debt and or other creditor obligations. In other words, one of the pieces of evidence that the claims administrator is supposed to review is whether or not sale proceeds are being used to pay off debts and liabilities. Your Honors, BP's approach to the meaning of the word liquidation and the District Court's approach to the meaning of liquidation makes that documentation requirement entirely irrelevant. What's the point of examining whether or not liquidation proceeds are being used to pay off debts if it really doesn't matter in the first place? And this fits exactly with the definitions that we submitted in our brief and that we have argued all along throughout this process. Black's Law Dictionary defines liquidation as the act or process of converting assets into cash, especially to settle debts. That especially is key. That's the difference between BP's approach, merely selling assets, and JME's. And the question is whether or not the plain and ordinary meaning of liquidation is used in the context of this settlement means the especially part. And, Your Honors, that fits with the section we just read, and it also fits with just the common way that this settlement agreement is to be implemented. Counsel, assuming, Arguendo, that we agree with you, that it's not a failed business under the first definition, is the third definition more problematic for you? So, in other words, the liquidation catch-all, Your Honor? Yes. I believe that's where the crux of the dispute between JME and BP is. So you don't think they're arguing the first definition anymore? Well, it's not. Because it didn't wind down. I think it's very clear that there was not a complete JME being, quote, wound down, end quote. No evidence at all of that. So you think the whole argument's in liquidation? I believe that's where perhaps BP, where the crux of the fight comes down. And it matters whether it means payoff debts? Yes, Your Honor. Or be used to invest in new assets? Absolutely. And I think your question, Judge Elrod, goes to the absurdity of BP's position. If all that liquidation means is selling off assets without regard to the broader business context, even though these definitions allow you to look at the broader business context, then suppose a two-risk business, their main asset is a bus. And they want to upgrade from one bus to another bus. So they sell the bus. They have thus sold their assets, BP, in order to fund the new bus. BP's definition gives no way to distinguish that situation. An ongoing growing business that sells assets in order to transition to new assets, it gives no way to distinguish between the two of them. That result doesn't fit with the purpose and intent of the settlement agreement. And the same reasoning applies to JME. So, Mr. Smith, your first argument is that it didn't even liquidate or didn't sell off things during the relevant time period. That's the first argument. And then the second argument is that it wasn't for paying off debts. Or is it not two separate arguments? They're not technically two separate arguments. The first is a factual observation. The truth is that the text of the settlement makes the relevant period for testing whether or not there's a failed business through the end of 2011. Okay, so we do consider the June event. Correct. And the question is whether or not that is a liquidation. And when the text of the definitions, we presented at least five different definitions in our opening brief. Black's Law Dictionary, Merriam-Webster's Collegiate Dictionary, the New Oxford American Dictionary, and the list goes on, on and on these dictionaries indicate that the plain and ordinary meaning of the word liquidation can include looking at the broader business context to see whether or not it's being done to pay off debts and liabilities. And there's absolutely no evidence of that here. The undisputed facts are that the reason for this transition was simply so that JME could transfer ownership of its ongoing, successful business from the owner to the owner and his family. The owner of JME retained an ownership interest in Golf Blue. Indeed, Golf Blue continued to do business as JME after the sale occurred. So in other words, to the broader world that's interfacing with JME, there was no change at all to the customers and all of that. For all intents and purposes, except for this on-paper technicality, it was the same business. So our client is caught in a technicality created by the district court that says that because they transitioned to ownership as part of an estate planning deal in June 2011 instead of waiting until, say, January 1st of 2012, they have to lose out on significant aspects of the settlement compensation formula that was designed exactly for businesses like JME that operate along the Gulf Coast for tourists and the like. There's no dispute that a tourist business on the Gulf Coast suffered significant losses following the oil spill. And there's been no challenge at all to JME's calculations or its claims other than this argument that somehow it's a failed business. So going back to the reasons to hold that liquidation has an element that considers whether or not the proceeds are used to pay off debt, the first reason is the text. The definitions support that as well as the fact that the text requires the claims administrator to evaluate whether or not proceeds of the sale are being used to pay off debts. The second is just the fact that BP's position leads to an absurd result. It means that claimants lose out just because they decide to do efficient business transactions, because they decide to upgrade their main asset from one asset to another. BP's definition of liquidation is over-inclusive when it comes to this context. And finally, this is an eminently workable situation. First, the text requires the claims administrator to be evaluating this type of data. This court and BP has argued time and again that in other contexts, the claims administrator needs to be looking at the facts and circumstances surrounding parties' submissions in order to decide what's really going on. Mr. Smith, would you be in a more difficult position here today if the district court had denied review? Yes, Your Honor. If the district court has discretion to deny review, in that case it would be abusive discretion. But here we're simply evaluating whether or not the district court accurately interpreted and applied the settlement agreement. That's a question of law regarding the meaning of the settlement agreement and something that this court construes de novo. And on a de novo review, the liquidation means what the dictionaries say it means, and it means the definition that fits the context here. And the result is that JME cannot be considered a failed business. And I didn't direct the court to its decision last fall in 910 Fed Third 797, and that was admittedly a different context regarding the settlement agreement. Did you decide that? This decision has come out since the briefing. Right, but you didn't file a 28-J or anything? Correct, Your Honor. And have you mentioned it to the opposing counsel this morning before you started that you were going to be citing a new case? No, Your Honor. Okay. Well, the better practice is to file a 28-J so that the opposing counsel can respond. But I'll let you talk about the case, and if they want to file a 28-J within two days, they may do so. Okay? That's just so you know for the future what the better practice is. Thank you. Yes, Your Honor. Thank you. And the point there was just that the court said that the claims administrator should, quote, look beyond mere labeling, end quote, to the substance of claims to decide, in that context, fixed or variable expenses, whether or not they actually are what the parties say they are. And there's no reason why the claims administrator shouldn't look at the surrounding business circumstances when it comes to liquidation. So we have to weigh in on this one way or the other at this point. This is not optional, correct? Yes, Your Honor. And there are appeal panels going both ways on this. Is that correct? I believe that there are some older appeals panels that may have gone the other way, but the majority of the recent opinions have followed the district court's approach in this case. Okay. I thought there was an older, definitely at least one appeals panel that was cited even in the case cited by opposing counsel. Yes, Your Honor. Okay. I think the final point that I'd like to make is BP has talked about crystal seafood and the court's decision in that case. That case does not control the definition of liquidation for several reasons. First of all, that case simply concerned with a claimant that was backtracking on its tax statements, its sworn tax statements that were filed with the claims administrator, and then it tried to create a fact issue by submitting a controverting affidavit. And this court said that that didn't work to create a fact issue. But you don't have a, this isn't something you've made up after the fact or didn't keep your books in orderly. You've taken a consistent position throughout about what the purpose of the liquidation was. Yes, Your Honor. Okay. Yes, Your Honor. And so all that being said, JME was an ongoing successful business. It merely decided to transfer ownership for purposes of family and estate planning. And it was not a liquidation within the plain and ordinary meaning of the term as used in this document. And there are two questions that I think it'd be helpful if BP could answer in their time because they didn't address them in their brief. And the first is, how does their definition of liquidation, merely converting assets into cash, how does that better fit with the context of the settlement agreement and the plain meaning of the rest of the document? And the second, Your Honor, is what dictionary are they even offering to support their approach? In their brief, they offered no support whatsoever for their current definition. And if the plain and ordinary meaning is what controls, we'd ask the court to look at the plain and ordinary meaning. Thank you. Thank you. We have your argument and you've saved time for rebuttal. Mr. Curtis. Thank you, Your Honor. Yes. And we were talking about that as you're approaching. It's an interesting custom that you are all asking if you can approach. We are all anxiously awaiting your approach. And you don't need to seek leave. But almost everyone here today has done that. I'm sorry. I'm taking your time. I don't mean to take your time. It's fine. May it please the court. I'm just repeating what I heard people do today. I thought it was a custom. Fair question. Exactly. Exactly. I am Doug Curtis and together with my colleague, Andrew Bergman, we represent the BP entities, the appellees here. As appellant has framed the issue in this case, the question is whether the settlement agreement, the existing document, whether the definition there of failed business should apply to successful businesses that reorganize somehow by transferring their assets of their ongoing enterprise from one corporate entity to another. That's their phrasing of the issue. And I don't run from it. The answer is yes. That's exactly how it's meant to be applied. If we were discussing the concept of a failure in the abstract, we might have an argument and there may be some traction given the circumstances that happened here. But we're not dealing with the concept of failure in the abstract, whether moral failure, financial failure, or any other kind of failure in the abstract. Rather, we are talking about a defined term in a contract. And the defined term is failed business. It's not hanging out there without any guidance. It is in the context of a much broader agreement. And it is defined according to the subparts that you've seen. As I prepared for this case and as I prepared for oral argument, I found that having the definition next to me helped, which is why I had the clerk leave in your chair the two pages that are excerpts from Exhibit 6 to the settlement agreement where failed businesses are defined. Are you relying on one or three or both? Both for sure. I think it squarely falls within both. And the overarching theme here is basically threefold. The definition of failed business does apply to the facts here because that's what the settlement agreement says, and we can go through that. It does apply here because prior cases in this court have agreed that on factually similar scenarios where entities have transferred operating facilities and operating assets from one entity to another entity, even if they were closely held, even if they were related, that that is still treated as a quote, unquote, defined term failed business because the focus is on the entity that is making the claim and there is not the wished for concept of some continuation of business operations. When you say other cases from this court, are you relying on anything other than graphic packaging? Graphic packaging. Because you know it's unpublished. I absolutely do. And we were reviewing it under the opposite standard where we said, oh, well, no harm, no foul, and even if, and it's not, you know, so it's not big authority there. It is not binding precedent. I certainly understand that. And it's in a very different procedural context. I do understand that as well. Much of the case law that arises in the BP settlement agreement context is of a similar ilk. Do you have any other cases that we've cited that you think would help us here? Adams Produce is the other. We've cited and discussed in our brief where, again, wholly separate entities. It was per curiam as well and it was unreported. Well, per curiam, that's another thing about our, we use per curiam in published opinions all the time. It's not an indicative that our opinions are less valuable. It's the published versus not published. It's the, I'm just, just for your education on that. And I appreciate the clarification. And I want to make it clear that Adams Produce was unpublished. And it was in the same situation as the graphic packaging? It was to the extent that there was one entity that transferred operating assets to a different entity. No, I'm talking about that the court refused to look at it, the district court. Remind me. Remind the court, please. Was this one where it was denied review and we said that's fine? I don't remember either, so. It's okay. We can, I'll look it up later. Can I ask you a hypo? Sure. Okay. You own, the business owns five hotels. After the hurricane, they decide to move across the street with their business and buy other hotels that are not on the beach side. So they sell off all the hotels that are on the beach side. But they're keeping all their capital to buy, look for good hotels across the street. Still going to name the hotels the same name and all of that sort of thing probably, or have the same brand at least. Are you saying those are failed businesses? No, not necessarily. Why is that different? Significantly, the entity that is, I mean, I think there would be a fair argument there that it could be, but I think that would be a harder factual determination and it would depend on, but if you went according to the definition, I think there would be a fair argument that it was not a failed business because, first of all, it didn't cease operation. First of all, the entity continued in operation. Secondly, the entity did not cease operations. Third, the entity did not wind down. What do you mean did not cease operation? It has no hotels. In my hypo, those hotels all got blown away. So they did cease hotels. And they're now in the business that they're just looking for hotels to buy with their stack of money as they sell off these hotels. They haven't yet started new hotels yet. They haven't? Oh, I'm sorry. They're looking for, no, they're wanting to buy across the way, and they're scouting it out. The reason that that would, I think, not be a failed business is because the entity continued to try to generate revenues. Well, that's basically the end of my sentence. The entity continues to exist. The first definition for failed business is whether it ceased operations. And if you're telling me that instead of taking proceeds and settling debts and going home and just winding down, that instead what they did was continue to try to offer hotel services in that area or another area. That entity has not ceased operations. It suffered losses. The losses would be profound, and they could be measured based on, presumably, if the hotels were washed away, revenues that were evaluated prior to the spill and zero revenues after the spill. But it's the same entity. And those losses, as they try to rebuild hospitality and hotel in that area, are losses that are attributable to the spill, and it's an ongoing uncertain risk about how that will continue to be affected. And that's what the risk transfer premium is for. By contrast, and I've said there are three overarching themes. One is the language. The second is that there are cases here, admittedly, on published opinions that have recognized this factual scenario. The third is that if you scratch the surface of the facts here even a little bit, you find that the whole notion that there is some big misunderstanding about what happened here and what terms apply is simply not true, because the purchase and sale agreement between JME and Gulf Blue Vacations says in paragraph 1.01 that as of June 1, 2011, which is in the period where the definition says if you've liquidated assets, it's during that period, it says that purchaser is purchasing substantially all of the assets of the ongoing business operated by seller. And then there is an exclusion, but literally the exclusion is for wall hangings and personal furniture in the office of Mr. Endry. The contract itself makes it clear that one entity sold substantially all of its assets to another entity. Does it matter that it was going to continue to be an ongoing entity and this is an estate planning vehicle in any of that? No. I think it doesn't matter, because the focus is on whether or not – I mean, another case in the Crystal Seafoods does – again, that's in the context of the case where there was a fraudulent attestation that something was not a failed business when it should have been recognized as a failed business. But one of the things that the court there recognized is that the framework of the business economic loss compensation scheme in the settlement agreement basically creates a binary system. You either have what they termed ongoing businesses or failed businesses. And again, that's not a distinction that determines whether or not compensation is available. It's simply a determination about how compensation is calculated. And in the case of ongoing businesses, which is the straightforward BEL framework, you know, there are at least two significant logical reasons why that would be set aside as one category. And that is, if revenue-generating operations are continuing or are being undertaken, then you can measure damages by looking at pre-spill revenues that were generated and post-spill revenues that were generated. And secondly, it does apply a risk transfer premium, which is an acknowledgment within the settlement agreement itself that a future stream of income has risks associated with it and therefore there is a built-in compensation. Is it precise? Is it mathematical or scientific in any given case? No, it's actually quite a blunt instrument that gets applied based on industries and locations. But that was what the agreement settled on. If you're going to have ongoing revenues into the indefinite future, then you get a risk transfer premium. By contrast, a quote-unquote failed business, and again, that's not a moral judgment. It's just something that fits the definition that's in Exhibit 6 that you have in front of you. That is a business that has ceased operations. By the definition, it has ceased operations and wound down. What does wound down mean to you? It is, as I think all parties agree, a process. It is a process of slowing down, of coming to some measure of closure. There is nothing, and it can take many years. That's been acknowledged by the appellant in this case. There is nothing in the definition here that says that to be a failed business, the entity must have ceased operations and completely have wound down or be completely wound down. Rather, during the period, it needs to have ceased operations and wound down. Not necessarily to completion. I would argue that it's as compelling or, frankly, much more compelling to say that it needs to begin the process of winding down, but there's no requirement that it be completed. Indeed, there are citations to cases where it takes three, four, or five years to wind down some corporations, and yet the period allowing that to happen is about 20 months under the settlement agreement if you construe it the way they do. It doesn't make any sense. Well, I think it's the issue is whether or not it's, do they stop operations or do they transfer operations as part of, I mean, that it's never wound down if it's transferred to something. I think that's their position. I think you have to focus on the entity, and the entity here has transferred operations to a different entity. The entity, the selling entity, JME, did cease operations. In fact, JME promises not to do business with these customers with all that. Okay. So my hypo with the hotels, if they spin it off to their subsidiary that does lower value hotels in the area because they don't want to be under their brand, and so they spin it off to some lower thing when they decide to buy these other hotels across the street because they can't find any fancy ones and they don't want to spend the time to build them. Is that, would they be wound down? I think that gets to a, it gets more difficult, and because the corporate relationships actually matter here, I'm not a specialist in every aspect of the settlement agreement, but a company can decide whether or not it wants to make one consolidated claim for all of its facilities in a region, or whether it wants to file specific claims for different facilities. Okay. So it matters about the subsidiary-parent relationship in my hypo. I think that just complicates things is all I'm saying. I actually think that if you have a corporate entity, and if that large corporate entity has subsidiaries and it transfers things internally, but it still makes a corporate claim, I think that it is an ongoing business. It's continued its operations through its holding structures and through its various facilities, and it has revenue, you know, it has hopes for revenue in the future because it's continuing operations. If viewed in a consolidated way, it's not a failed business. If, on the other hand, it just sells the remnants or the, you know, whatever's left to another hotel chain altogether, and decides it's not in the business of doing hotels anymore, it fits the failed business definition because it's ceased operations. It is winding down. It wound down during the period that's defined here, and entirely separately. I mean, we certainly can't skip over the second little I.I. here for bankruptcy because that wasn't in place, but we haven't touched too much on the liquidation. So the definition also includes otherwise initiated or completed a liquidation of substantially all of its assets. Now, liquidation to pay off debts, do you carry that baggage or not? Do you carry the baggage of to pay off debts? No, I'm pleased to be able to address that. Well, the Black's Law and all the dictionaries to pay off debts. Here's what I would like you to go back and read in all of those definitions because I've done it. If one is talking about how to define liquidation of an entity, it means selling off assets of the entity in order to... I mean, that can be the preferred definition. That is not what we have here. We have a completely different verbal formulation. It is a question of whether the entity completed a liquidation of its assets. So to liquidate an entity, and using... I don't even remember, this is like fourth grade, but if entity is the object of the sentence, then it can imply a process of winding down and settling debts. But if the definition, and this is certainly how everyone, the program administrator, the appeals panels that have reviewed this, and the district court who have reviewed it, agreed that by liquidating substantially all of its assets, by selling substantially all of its assets, remember this purchase and sale agreement said purchaser is purchasing substantially all of the assets of the ongoing business, that this company, whatever its plans in the near term or long term in terms of settling all of its debts, is no longer an operation. It ceased operations and it needs to be treated and then evaluated as a failed business. And it is important to note that being evaluated as a failed business does not mean you're a loser and you don't get compensation. It just means that in recognition of the different situation, that an ongoing business versus a business that ceased operations faces, you need to do a different calculation for damages. That was not a beneficial calculation in this transaction on these facts for this claimant. That doesn't mean that the settlement agreement was misapplied here. It just means that under the formula that applied to a business that ceased operations and was winding down and had sold substantially all of its assets, liquidated substantially all of its assets, that the measure was to look at the total enterprise value before versus the liquidation value. And of course in assessing that liquidation value, you will look at whether or not debts were paid. That was something that the program would look at to assess the overall measure of potential loss. But it's not a necessary condition that there be a settlement of debts in order to qualify as a failed business and to get into that rubric and that form of damage compensation measurement. Thank you. Do you have anything else? I really think I don't. If the court doesn't have anything further, I appreciate your time. Thank you very much. We have your argument. Do you have anything for rebuttal? Forgive me for jumping in, but opposing counsel says wound down, winding down, potato, patata, they're all sort of the same. And what do you say? Wound down is a different verb tense than winding down. This is a carefully negotiated settlement. Skilled lawyers, lots was on the line. They chose the word wound down, and then they put a deadline, the end of 2011. So that's the deadline by which being wound down needs to happen. That's the text of the settlement. That's what it means. So that's my first point on rebuttal. Two other points, Your Honor. BP suggested that applying the normal compensation framework isn't reasonable for JME, talking about the risk transfer premium and all of that. Your Honors, JME did generate revenues during the entire compensation period. Its compensation period was 2010. It didn't sell the business until later. So the suggestion that it doesn't fit because revenues weren't being generated doesn't work. As for the risk transfer premium, it's a multiplier that's supposed to compensate for, quote, And in this case, when you're selling damaged goods or goods that might risk being damaged due to the spill, that's the precise sort of loss that the risk transfer premium was supposed to capture. All of these unknowns, having to sell damaged goods or a damaged business, that's what the risk transfer premium captures, as well as the risk that maybe the notes or whatever's part of that transaction might not be able to be fully paid off due to the continuing repercussions of the spill. That's exactly what that compensation portion was for. And the final point that I would like to make is this distinction between liquidating an entity and liquidating assets. Your Honors, the settlement talks about liquidating assets in the context of a business failure. And the dictionary definitions that we have cited are talking about liquidating assets for a particular purpose, to settle debts. Black's Law Dictionary doesn't talk about liquidating an entity. It says the actual process of converting assets into cash, especially to settle debts. That fits this context exactly, and that is not what JME did. The other definitions reinforce the same point. What do you say to the argument that entity is not the object in that same way, liquidate and entity? Right, so the question is whether or not assets are being liquidated. I agree with that. But what does it mean to liquidate assets? And Black's Law Dictionary tells us that when assets are the object, liquidating assets, it still means to settle debts. So when assets are the object, the same result obtains. Yes, Your Honor. The last point I'd like to briefly make. BP mentioned the Adams Produce case. That case had to do with the who. Who should file the claim? Is it the entity existing at the time of the spill, or the successor entity? That case said that the entity in existence at the time of the spill is the one who should file the claim. That's exactly what JME did here. It was an ongoing business. It didn't fail. There were no signs of financial distress. And we believe that the regular compensation framework should apply. Unless there are any further questions, that is JME's position. I think we have your argument. This case is submitted. The arguments today were very helpful. Thank you.